**CHRYSLER FINANCIAL COMPANY, L.L.C., Appellant,**

v.

**Mark J. SCHLANT, Chapter 7 Trustee, Appellee.**

**In re Joseph E. Dembrosky, Sr. and Patricia A. Dembrosky.**

**No. 99–CV–379A.**

United States District Court, W.D. New York.

Jan. 19, 2000.

---

F. Matthew Jackson, Deily & Testa, Albany, NY, for the appellant.

Mark J. Schlant, Zdarsky, Sawicki & Agostinelli, Buffalo, NY, the for appellee.

Louis B. Toth, Jr., Williamsville, NY, for the debtors.

## DECISION AND ORDER

ARCARA, District Judge.

### *INTRODUCTION*

Chrysler Financial Company, L.L.C. ("CFC") appeals from a decision of the bankruptcy court holding that CFC does not have a perfected security interest in the debtors-in-bankruptcy's automobile because the certificate of title issued for the vehicle by the New York State Department of Motor Vehicles ("DMV") did not list CFC as a lienholder. For the reasons stated, the decision of the bankruptcy court is reversed.

## STATEMENT OF FACTS

The facts in this case are undisputed. On September 29, 1994, the debtors-in-bankruptcy, Patricia A. and Joseph E. Dembrosky, purchased the automobile at issue, a 1994 Plymouth Grand Voyager, from Sheridan Chrysler Plymouth, Inc. ("the dealer"), pursuant to a retail install-ment contract. Pursuant to the terms and conditions of the contract, the contract was assigned by the dealer to CFC. Thus, CFC obtained a security interest in the vehicle.

On October 6, 1994, pursuant to New York Vehicle and Traffic Law § 2118(b)(1)(A), the dealer delivered to the DMV an application for a certificate of title containing the name and address of the lienholder, CFC, and the required fee. On November 8, 1994, the DMV issued a cer-tificate of title to the debtors, but failed to list CFC as a lienholder on the title. The debtors continued from November 1994 through September 1998 to make regular monthly payments to CFC in accordance with the retail installment contract.

On August 8, 1998, the debtors filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Bank-ruptcy Code in the Western District of New York. During the course of the bank-ruptcy proceedings, the appointed Chapter 7 trustee discovered that the certificate of title for the debtors' vehicle did not list CFC as a lienholder, even though CFC was listed as a secured creditor in debtors' bankruptcy petition. The trustee then no-tified CFC of the absence of its lien from the certificate of title and alleged that CFC does not have a properly perfected security interest.

In response to the trustee's allegation that its lien was not properly perfected, CFC obtained certified copies of the title application from the DMV which showed that the dealer properly listed CFC as a lienholder in the application.

In or around October 1998, CFC ceased receiving monthly payments from the debtors, and on January 25, 1999, filed a motion for relief from the automatic stay. On January 27, 1999, the Chapter 7 trust-ee cross-moved to avoid CFC's lien.

On May 21, 1999, the Hon. Michael J. Kaplan, United States Bankruptcy Judge, issued a decision finding that CFC does not have a perfected security interest in the debtor's vehicle because CFC is not listed as a lienholder on the title. *In re Dembrosky*, 235 B.R. 245 (Bankr.W.D.N.Y. 1999). CFC appeals from this decision.

## DISCUSSION

Article 46 of the New York Vehicle and Traffic Law, the Uniform Vehicle Certifi-cate of Title Act, establishes the require-ments for perfection of a security interest in a motor vehicle of the type owned by the debtor. Section 2118(a) of that statute states generally that no security interest in a motor vehicle is valid "unless perfected as provided in this section."[1] Section 2118(b)(1)(A) of the statute provides that a security interest in a motor vehicle is per-fected "[b]y the delivery to the commis-sioner of ... the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the required fee ..."[2]

CFC argues that, under § 2118(b)(1)(A), its security interest in the debtor's vehicle

1. The Court notes that § 2118(a) was amend-ed in September 1999, and now states that "[a] purchase money security interest in a vehicle is perfected against the rights of judi-cial lien creditors and execution creditors on and after the date such purchase money secu-rity interest is created." The parties agree, for purposes of this appeal, that this amend-ment does not apply retroactively to this case.

2. Section 2105(b) of the New York Vehicle and Traffic Law governs the application for the first certificate of title for a new vehicle: If the application refers to a vehicle pur-chased from a dealer, it shall contain the name and address of any lienholder holding a security interest created or reserved at the time of the sale and be signed by the dealer as well as the owner, and the dealer shall promptly mail or deliver the application to the commissioner.

was perfected as soon·as it delivered the required documents and fee to the DMV and that there were no additional steps necessary for perfection. In other words, CFC argues that the listing of its name on the title as a lienholder was not a requirement for perfecting its security interest.

The bankruptcy court rejected this argument, relying on *General Motors Acceptance Corp. v. Waligora*, 24 B.R. 905 (W.D.N.Y.1982). In *Waligora*, debtors in a Chapter 7 proceeding had granted a pre-petition security interest in their automobile to General Motors Acceptance Corporation ("GMAC"). Although the title application listed GMAC as the secured party and although the requisite fee was paid, the DMV failed to list GMAC as lienholder on the title it issued to the debtor. Affirming a bankruptcy court decision that disallowed the secured claim of GMAC, the Hon. John T. Elfvin, United States District Judge, held that, even though § 2118(b)(1)(A) appears, on its face, to provide that mere delivery of the items specified in that section to the DMV is sufficient to perfect a lien, notwithstanding a subsequent failure of the DMV to list the lienholder on the title, such an interpretation is contradicted by other provisions in the New York Vehicle and Traffic Law which enable a lienholder to protect itself in the event the DMV fails to list the lienholder on the title. For example, § 2108(a)(3) requires that the certificate of title issued by the DMV identify the lienholder. Section 2118(b)(2)(B) allows the lienholder itself to notify the DMV of its lien. Section 2107(c) provides that the DMV is required to "issue and mail to the lienholder ... a notice of recorded lien" after the lien has been entered on the title. Finally, § 2127 allows a lienholder to seek a correction of the title if the DMV fails to list the lienholder on the title. Judge Elfvin concluded that "[t]aken together, these provisions indicate that a security interest in a motor vehicle subject to Article 46 is not perfected unless the security interest is properly noted on the certificate of title." *Id.* at

907. Judge Elfvin reasoned that the protection provided by these other sections of the Vehicle and Traffic Law would be entirely unnecessary if the security interest were perfected by merely complying with the requirements of § 2118(b)(1)(A). *Id.*

In this case, the bankruptcy court concluded that it was bound by Judge Elfvin's decision in *Waligora*. Accordingly, the bankruptcy court held that CFC does not have a perfected security interest because its name does not appear as a lienholder on the certificate of title.

The Chapter 7 trustee argues that this Court should also follow *Waligora* and affirm the bankruptcy court. The trustee argues that when CFC failed to receive a notice of recorded lien as provided for under § 2107(c), CFC should have inquired of the DMV whether a title was issued, and had CFC done so, it would have discovered that a title was issued and that the title failed to list CFC as a lienholder. CFC then could have taken steps under the statute to correct the title so that it listed CFC as a lienholder. Having failed to take these steps, the trustee argues, CFC failed to obtain a perfected security interest.

Thus, the question before the Court is whether, under the New York Vehicle and Traffic Law, a creditor's lien on an automobile is perfected under § 2118(b)(1)(A) as soon as the appropriate documentation and necessary fee are delivered to the DMV, despite the subsequent failure of the DMV to list the creditor as a lienholder on the title, or whether, instead, the security interest is not perfected unless or until the creditor is listed as a lienholder on the title.

 The New York Vehicle and Traffic Law is a state statute whose interpretation is ultimately the prerogative of the courts of New York State. *See* 28 U.S.C. § 1652 ("The laws of the several states ... shall be regarded as rules of decision in civil actions in the court of the United States in cases where they apply."). Thus,

federal courts must honor a definitive pronouncement of that law by New York State's highest tribunal, the Court of Appeals. As to issues on which the New York Court of Appeals has made no such definitive ruling, federal courts must try to predict that court's likely interpretation of the statute. The function of the federal courts is not so much to determine the statute's proper meaning as it is to discern the interpretation that the New York Court of Appeals would most likely adopt. For such guidance, the federal court must consider the decisions of the state's lower courts. In *In re Brooklyn Navy Yard Asbestos Litigation*, 971 F.2d 831, 850 (2d Cir.1992), the Second Circuit Court of Appeals summarized the appropriate standard:

> A federal court faced with a question of unsettled state law must do its best to guess how the state court of last resort would decide the issue. Where the high court has not spoken, the best indicators of how it would decide are often the decisions of lower state courts.

The United States Supreme Court has held that, in cases where state law is to be applied, federal courts are obliged "to ascertain from all the available data what the state law is and apply it rather than to prescribe a different rule, however superior it may appear from the viewpoint of 'general law' and however much the state rule may have departed from prior decisions of the federal courts." *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940) (citations omitted).

■ The New York Court of Appeals has never ruled on the proper interpretation of the security interest perfection requirements in Article 46 of the New York Vehicle and Traffic Law. Thus, this Court must try to predict how the New York Court of Appeals will likely interpret the statute, using all available data, especially the decisions of the state's lower courts. In making this determination, the Court is not bound by Judge Elfvin's decision in

*Waligora*. *See Threadgill v. Armstrong World Indus.*, 928 F.2d 1366, 1371 & n. 7 (3d Cir.1991) (the doctrine of *stare decisis* does not compel one district court judge to follow the decision of another).

Judge Elfvin's decision in *Waligora* appears to have been a case of first impression at the time it was decided. Since that decision, however, all of the reported cases dealing with this issue have reached a contrary conclusion. The chief of these is the state court decision in *Fitzpatrick v. Bank of New York*, 124 Misc.2d 732, 480 N.Y.S.2d 157 (App.Term 1983), *rev'g*, 118 Misc.2d 771, 461 N.Y.S.2d 703 (Civ.Ct. 1983). In *Fitzpatrick*, the plaintiff had acquired an interest in a motor vehicle from someone who had purchased the car at an auction conducted to satisfy a judgment for unpaid parking tickets. The original owner had previously given a security interest to the Bank of New York and the Bank of New York had completed the steps required under New York law to perfect its lien. Nonetheless, the DMV had issued to the auction purchaser a certificate of title without any notation of a security interest. Thereafter, the DMV issued another clean title to the plaintiff. When the Bank of New York then repossessed the vehicle, plaintiff commenced an action to recover the automobile. On cross-motions for summary judgment, the Civil Court of Queens County ruled in favor of the lienholder. It held that the certificate of title constituted only prima facie evidence of ownership and that no unilateral action by the DMV could release a lien that the creditor had properly perfected under Vehicle and Traffic Law § 2118. On appeal, the appellate term identified defects in the notice of the secured creditor's sale and accordingly reversed. It found, however, that "[t]he court below correctly concluded that [the defendant lienholder] had the right to take possession of the collateral pursuant to its perfected security interest regardless of the administrative negligence of the Department of Motor Vehicles." *Id.* at 159.

The appellate term held that pursuant to Vehicle and Traffic Law § 2118(a), "[a] perfected security interest takes priority over the purchaser of the collateral, even though that purchaser is without knowledge of the lien." *Id.* Citing Vehicle and Traffic Law § 2108(c) [3], the court further held that "reliance [by a purchaser] upon a clear certificate of title is misplaced inasmuch as it is merely prima facie evidence of its contents, which, of course may be rebutted." *Id.; see also Green v. Arcadia Fin., Ltd.,* 174 Misc.2d 411, 663 N.Y.S.2d 944, 945 (Sup.Ct.1997) (the certificate of title is only prima facie evidence of the information contained therein), *aff'd,* 261 A.D.2d 896, 689 N.Y.S.2d 596 (1999).

After *Fitzpatrick,* federal courts that have considered the issue of whether the New York Vehicle and Traffic Law mandates the listing of the lienholder on the certificate of title as a condition for perfection have all answered in the negative. In *Lucas v. Pennbank,* 142 B.R. 68 (W.D.N.Y. 1992), the Hon. John T. Curtin, United States District Judge, declined to extend *Waligora* when faced with similar facts. There, Judge Curtin noted that the plain language of Vehicle and Traffic Law §§ 2108(c) and 2118 and the *Fitzpatrick* court's interpretation of those sections clearly supported the proposition that a security interest in a motor vehicle is perfected as soon as the requirements of § 2118(b)(1)(A) are satisfied. *Id.* at 71. Distinguishing the facts in that case from those in *Waligora,* however, Judge Curtin avoided having to resolve the conflict between *Fitzpatrick* and *Waligora.*

Bankruptcy courts in this district and two other districts have also held that identification of the lienholder on the certificate of title is not a required condition for lien perfection under the Vehicle and

Traffic Law. *See In re Fisher,* 185 B.R. 457, 459 (Bankr.W.D.N.Y.1995) (mere compliance with filing requirements in § 2118 was sufficient to perfect a security interest in automobile); *In re Beaudoin,* 160 B.R. 25, 30 (Bankr.N.D.N.Y.1993); *In re Microband Co.,* 135 B.R. 2, 5 (Bankr.S.D.N.Y. 1991); *see also In re Thorsell,* 229 B.R. 593, 595–98 (Bankr.W.D.N.Y.1999) (distinguishing *Waligora* factually).[4]

▉ In view of the plain language of §§ 2108(c) and 2118 of the Vehicle and Traffic Law, the state court's interpretation of those sections in *Fitzpatrick,* and the post-*Fitzpatrick* federal court decisions discussed above, the Court finds that the New York Court of Appeals would likely interpret the provisions of Article 46 of the New York Vehicle and Traffic Law to mean that a security interest in a motor vehicle is perfected when the proper documentation and fee required by § 2118(b)(1)(A) are delivered to the DMV and that perfection does not require the listing of the lienholder on the title. By its plain language, § 2118 is the only section of the Vehicle and Traffic Law governing the requirements for perfection of a security interest in an automobile. Nothing in § 2118 conditions perfection on the appearance of the lienholder's name on the issued certificate of title. Rather, it plainly states that mere compliance with the prescribed filing requirements—the delivery of a proper application and fee to the DMV—is sufficient to perfect a security interest. Moreover, § 2108(c) provides that the title is only prima facie evidence of the facts contained therein. Thus, as the state court held in *Fitzpatrick,* a certificate of title does not offer dispositive proof of the existence or absence of any lienholders. The information contained on (or omitted from) the certificate of title can

---

3. Section 2108(c) provides:
 A certificate of title issued by the commissioner is prima facie evidence of the facts appearing on it.

4. The *Waligora* decision has been cited by the Second Circuit Court of Appeals. *See In re*

*Males,* 999 F.2d 607, 612 (2d Cir.1993). However, that case pertained to registration of an out-of-state vehicle and applicable time prescriptions under the Uniform Commercial Code and the Vehicle and Traffic Law which are not at issue here.

be rebutted. Accordingly, so long as the lienholder has met the requirements of § 2118(b)(1)(A), the mere negligent omission of the lienholder's name from the certificate of title by the DMV is insufficient to constitute a satisfaction or release of such lien, nor does it alter the priority status of the lienholder's security interest in the vehicle.

It is undisputed that the dealer in this case delivered to the DMV an application of certificate of title containing the name and address of CFC as a lienholder and the required fee, in accordance with all the requirements of § 2118(b)(1). The statute required no more action by CFC to perfect its security interest. The DMV negligently failed to list CFC as a lienholder on the certificate of title. The DMV's negligence, however, did not negate CFC's perfected security interest.

While as a practical matter, CFC should have acted more diligently in ensuring that it was listed as a lienholder, it was not required to do so under the statute. Although § 2107(c) of the Vehicle and Traffic Law requires the DMV to issue a lienholder a notice of recorded lien upon the issuance of a certificate of title resulting from the original title application, the statute imposes no affirmative duty on the lienholder to monitor receipt of such a notice. If the legislature had intended to shift the burden to lienholders to ensure that the issued certificate of title is correct, it would have required lienholders to monitor receipt of the notice of lien and to utilize the corrective measures available in Article 46 of the Vehicle and Traffic Law, as cited by the trustee, to correct the title if the DMV fails to list the lienholder therein. However, the statutory provisions cited by the trustee are all permissive rather than mandatory in nature. *See, e.g.,* N.Y.Veh. & Traf.Law §§ 2119 (permits the lienholder to submit a new application to place its name on a certificate of title and requires the vehicle's owner to cooperate in the process); 2117 (provides that any person aggrieved by the act or omission of

the DMV may have a hearing); 2124(a)(1)(i) (provides that the lienholder may cause the DMV to suspend or revoke a certificate of title if the certificate of title was erroneously issued). None of these provisions can be read as requirements of perfection. As stated above, "perfection" is governed only by § 2118.

The trustee argues that the interpretation of the statute advanced by CFC should be rejected because it is contrary to the legislature's intended purpose of protecting unwary purchasers from purchasing a vehicle that is subject to a lien of which there is no notice on the title. The Court finds this argument without merit.

■■■ Although it is clear that the legislature's intent in passing the statute was to provide protection to automobile purchasers, it is equally clear that the legislature did not intend to provide such purchasers with complete protection. The plain and unambiguous language of a statute is the best indicator of legislative intent and is controlling. *See Sega v. New York*, 60 N.Y.2d 183, 469 N.Y.S.2d 51, 55, 456 N.E.2d 1174 (1983). As stated above, § 2108(c) of the Vehicle and Traffic Law expressly provides that the certificate of title serves as only prima facie evidence of the facts appearing therein. Thus, as the state court held in *Fitzpatrick*, purchasers cannot rely completely on the information contained in the title because it is not conclusive proof that the vehicle is free of liens. Had the legislature intended to protect purchasers completely, it would have made the information on the title conclusive, thereby shifting the burden to the lienholder to make sure its lien is listed on the title. By making the title only prima facie evidence, the legislature clearly expressed its intention that the title not be considered definitive proof as to the existence of any liens on the vehicle. While it might be better policy to provide purchasers with more complete protection, that is not what the legislature chose to do, and the Court is not free to implement such a policy by adopting an interpretation of the

**620**

statute that is contrary to its plain language.

The trustee contends that automobile purchasers will be left unprotected if the statute is interpreted as CFC proposes because a lienholder such as CFC might not be diligent in making sure that its security interest is reflected on the title if such action is not a requirement for perfection. This contention, however, ignores the fact that a lienholder has a real interest in having its lien appear on the title, even if its security interest is already perfected. By having its lien indicated on the title, the lienholder puts the world on notice that it has a lien on the vehicle and can avoid having to waste time and resources establishing its lien in legal proceedings. This case is a prime example. Had CFC been more diligent and made sure its lien was indicated on the title, it could have avoided this whole proceeding. Thus, as a practical matter, a lienholder has an economic incentive or motivation to use the corrective procedures in Article 46 of the Vehicle and Traffic Law to correct a title issued without the lienholder listed therein, even if the lienholder already has a perfected security interest in the vehicle.

### CONCLUSION

For the reasons stated, the Court finds that CFC's security interest in debtors' automobile is perfected. Therefore, the decision of the bankruptcy court is reversed.

IT IS SO ORDERED.